Elias Haskell, *in equity, versus* Stephen Hilton & *al.*

After the assignment of all interest in a *chose in action*, upon which a claim in equity is founded, the bill must be brought in the name of the assignee; and it is not necessary that the assignor be a party.

A total want of legal or equitable interest in the plaintiff in a suit in equity, is fatal to the bill; and the objection may be taken by demurrer, or at the hearing.

Bill in equity, charging that the plaintiff is a creditor of one William Smith, and that the defendants have received and now hold the property of said Smith, by a fraudulent trust, for said Smith's use, and to defeat his creditors.

The defendants filed a cross-bill, presenting to the plaintiff, Haskell, certain interrogatories. The character and the decisive effect of the plaintiff's answer are stated in the opinion of the Court.

Upon the question whether there was such a fraudulent trust, as is charged in the bill, there was a large mass of testimony. Whatever else the depositions might or might not prove, they bear abundant testimony to the industry of the counsel. But as to the issue in this case, their contents are immaterial.

*Warren*, for complainant.

*W. L. Walker, Appleton* and *Stewart*, for S. Hilton.

*E. E. Brown*, for H. Hilton.

Howard, J. — The plaintiff alleges that in January, 1846, he recovered a judgment, for $3557,07, against Smith, as drawer of three bills of exchange ; one of which was payable to the order of the plaintiff, and the others were payable to Fairbanks, Loring & Co., or order, and all bearing date Sept. 22, 1835. That execution was obtained, and levied on a farm

in Newport, as the property of Smith, in February, 1846, in part satisfaction of the judgment. That Smith, being insolvent, had fraudulently conveyed real and personal property, to a large amount, to the defendants, prior to that time; and that the *Newport farm*, was acquired by the defendants, in 1837, in exchange'for other real estate, which they fraudulently held in trust for Smith, by his procurement, to keep it from the reach of his creditors.

The prayer for relief is, " that the defendants may be decreed to convey to the plaintiff said farm in Newport, *in confirmation of his title thereto under said levy;* and that they may be held to account for all moneys and payments, received by them, or either of them, " growing out of any matters specified in the bill; and may be held to pay over the same to your orator, or so much as shall satisfy his said judgment, and that he may have such other and further relief as to the Court may seem meet."

There was evidence tending to show that the defendants may have acquired the title to the *Newport farm* in the manner, and for the purposes stated in the bill; yet, it is proved beyond controversy, that Smith never had any title, or legal interest in the premises, and that he became a certified bankrupt, in 1844. The plaintiff, therefore, acquired no legal interest in the farm, by the levy of his execution upon it, as the property of Smith. *Kempton* v. *Cook,* 4 Pick. 305; *Howe* v. *Bishop,* 3 Metc. 26; U. S. Bankrupt Law, August 19, 1841, sect. 3.

In September, 1845, the plaintiff appointed Warren his attorney to collect the demand against Smith, with authority to compromise, adjust and settle the same, as he might think proper, and to institute any proceeding in law or equity, at his discretion, to effect the purpose. But, afterwards in the winter following, and in pursuance of an agreement made the preceding fall, the plaintiff sold to Warren, absolutely and unconditionally, the bills of exchange. In his answer to the defendant's cross bill, the plaintiff says, that " he supposes, by the sale, all beneficial interest in said bills of exchange passed

to said Warren, and that the judgment recovered thereon belongs to him, said Warren; — that this respondent has no beneficial interest in said judgment, and that said suit is prosecuted, to the best of his knowledge, for the benefit of said Warren; but of this he knows nothing more, than that he sold said bills of exchange, by a verbal agreement, to said Warren for $300, which has since been paid to this respondent. That it is agreed and understood, that said Warren is to have all that is recovered of said Hilton in the original suit in equity against Stephen and Nathaniel Hilton."

The proof is conclusive that Warren had the entire legal and equitable interest in the bills of exchange; that he was the real creditor in the judgment against Smith, and that this suit is prosecuted for his sole and exclusive benefit. 2 Story's Eq. Jurisp. § 1047.

It is a general rule in equity that all persons legally or beneficially interested in the matter of the suit, should be made parties, in order that complete justice may be done to all whose rights or interests would be affected by the decree.

Courts of equity disregard the niceties of the common law in cases of assignments of choses in action, by giving effect to the assignment, and requiring the real parties in interest to bring the suit. When the assignment is absolute, and there is no remaining right or interest of the assignor, to be affected by the decree, then, there is no necessity for making him a party to the bill. *Hill* v. *Adams*, 2 Atk. 39; *Brace* v. *Harrington*, 2 Atk. 235; Story's Eq. Pl. § 153, 154, 197; Story's Eq. Jurisp. 1039, 1040; *Executors of Brasher* v. *Van Cortland*, 2 Johns. Ch. 247; *Whitney* v. *McKinney*, 7 Johns. Ch. 144; *Sedgwick* v. *Cleveland*, 7 Paige, 287; *Field* v. *Maghee*, 5 Paige, 539; *Chambers* v *Goldwin*, 9 Ves. 269.

The want of interest in the plaintiff is fatal; and the objection on that account may be taken on demurrer, or at the hearing. Daniel's Ch. Pr. 338; Story's Eq. Pl. 508, 509, 541; *Stafford* v. *London*, 1 P. Wms. 428.

The real plaintiff, in this case, is not before the Court. The complainant having neither a legal, nor an equitable

interest in the subject matter of the suit, cannot maintain the bill.                                    *Bill dismissed with costs.*