Helen C. Andrykowski, Individually and as Administrator of the Estate of Phillip J. Arendt, et al., Plaintiffs-Appellees, v. John Theis, et al., Defendants.

On Appeal of John Theis, Defendant-Appellant.

Gen. No. 48,640.

First District, Third Division.

January 30, 1963.

Alex H. Dolnick, of Chicago (J. S. Krakauer and Seymour Schriar, of counsel), for John Theis, defendant-appellant.

Luster & Luster, of Chicago (Julian J. Luster, of counsel), for appellees.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment entered in the Circuit Court of Cook County in favor of plaintiffs Helen C. Andrykowski, individually and as administrator of the estate of Phillip J. Arendt, George Arendt, Frank Arendt, Walter Arendt, Edward Arendt, John Arendt, George Andrykowski, and Judy Andrykowski, a minor by her next friend. From the record it appears that Emma R. Arendt (also known as Emma R. Arndt) died testate in Chicago, Illinois on November 23, 1947 seized in fee simple of a certain parcel of real estate located at 5015 North Spaulding Avenue, Chicago, which parcel is improved with a two-flat building and was the decedent's sole asset. The will of Emma Arendt was filed with the Probate Court of Cook County, Illinois on May 6, 1948. On October 29, 1956 appli-

cation was made for its admission to probate after proper notice had been given. The Probate Court of Cook County, after a hearing, admitted the will to probate without contest on December 21, 1956, and letters testamentary were issued to John Theis, the executor named in the will and one of the defendants in this case. The will contained the following provisions, among others:

> "THIRD: I give, devise and bequeath to my husband PHILLIP JOSEPH ARNDT, the right during his lifetime to occupy the real estate and improvements thereon known as 5015 North Spaulding Avenue, Chicago, Illinois, and to collect the income therefrom, subject, however, to the payment by my said husband of all real estate taxes levied against said property and the payment of all bills for repairs and improvements at any time made on said premises.
>
> "FOURTH: I give, devise and bequeath all the rest, residue and remainder of my Estate, real, personal and mixed, of every kind and character, as follows towit:

> "An undivided one-third thereof to my brother, ROBERT THEIS, him and his heirs forever.
> An undivided one-third thereof to my brother, GEORGE THEIS, him and his heirs forever.
> An undivided one-third thereof to my brother, JOHN THEIS, him and his heirs forever."

The said real estate had been the sole property of Emma R. Arendt prior to the time of her marriage to Phillip J. Arendt, and the legal title was in her name alone at the time of her death. Phillip J. Arendt, the life tenant under the said will, occupied said property for approximately nine years after the death of his wife, collected and retained all of the rents therefrom, and made no accounting of the same to anyone. He

184

died intestate on October 2, 1956 in Chicago, Illinois and a petition was filed with the Probate Court of Cook County by Helen C. Andrykowski, one of the plaintiffs here, for letters of administration, which were issued on November 19, 1956. The only asset listed in the inventory in the said estate was an alleged one-half interest of Phillip in the aforesaid real estate of his deceased spouse.

On January 28, 1957 the said Helen C. Andrykowski, as administrator, filed an ex parte petition in the Probate Court of Cook County for an order whereby the said court would give the administrator leave to file, on behalf of Phillip J. Arendt, a renunciation of the will of Emma R. Arendt. No notice was given, and the Probate Court, without hearing, entered an ex parte order which provided that the court "approved" the election to renounce the will, and directed the administrator of the estate of Phillip J. Arendt, on behalf of said decedent, to file a renunciation of the said will in the estate of Emma R. Arendt. The administrator did file with the Clerk of the Probate Court of Cook County, on behalf of the deceased Phillip J. Arendt, a renunciation of the will of Emma R. Arendt, which renunciation was executed by the said administrator of the estate of Phillip.

On April 23, 1958 Helen C. Andrykowski, individually and as administrator of the estate of Phillip J. Arendt, together with the other plaintiffs herein mentioned, filed their complaint in the Circuit Court of Cook County for a partition of the aforesaid real estate, claiming an undivided one-half interest therein pursuant to the aforesaid renunciation. A motion to strike the complaint was filed. The plaintiffs thereupon by leave of court filed an amended complaint.

Count I of the amended complaint prayed for a declaratory judgment, setting out, among other things, that an actual controversy existed between the parties

to this action with respect to the title to the real estate as to whether or not the plaintiffs are seized of an undivided one-half interest in the property in common with the defendants, and it further set out the contentions of the defendants that the provisions of the will of Emma R. Arendt vested the entire fee simple title to the property in the defendants after the death of Phillip, and that the right of the surviving spouse to renounce the provisions of the will was a personal right which after the death of the surviving spouse could not be exercised by anyone on his behalf.

The plaintiffs alleged that on the death of Emma R. Arendt an undivided one-half interest in the real estate in common with the defendants was vested by operation of law in Phillip Arendt, her surviving spouse, and upon his death it vested by operation of law in the plaintiffs individually, and that the admission of the will of Emma to probate two months after the death of Phillip did not alter or affect the title so vested, and alleged in the alternative that if the admission of the will did affect the title, the renunciation was proper and nullified and rejected the effect of the provisions of the will of Emma. The plaintiffs prayed for a declaratory judgment. Count II was a complaint for partition.

An answer was filed by John Theis to Count I of the amended complaint, and leave was given him to defer answering Count II until after a final determination was made on Count I. On November 7, 1958 the court entered an order transferring Count I of plaintiffs' amended complaint to the law side of the court for hearing on the question of the declaratory judgment.

The parties entered into an agreement for the sale of the property and the substitution of the money received for such sale as the subject matter of the suit. The property was sold and all of the parties having any possible interest to the fee in the real estate executed and delivered quitclaim deeds. The money

186

was deposited with the Chicago Title and Trust Company subject to the further order of the court. On June 13, 1960 John Theis filed a petition setting up that agreement and asking for an order substituting the proceeds of the sale for the real estate originally sought to be partitioned, and for a finding that all of the plaintiffs and all of the defendants now have no right, title or interest to the said real estate. On the same day the court entered an order reciting that the proceeds from the sale of the real estate, which is the subject matter of the suit, is substituted for and "in lieu of the said real estate as the subject matter of this cause of action," and the court found that neither the plaintiffs nor the defendants have any further interest in the real estate, and that the sum of $13,224.78, the proceeds of the sale, shall be deposited with the Chicago Title and Trust Company subject to further order of the court.

On June 24th, after hearing argument of counsel the court entered an order deciding the issues under Count I of the amended complaint, in which order, after setting out the fact that no renunciation of the will of Emma R. Arendt had been filed in the Probate Court of Cook County by Phillip J. Arendt during his lifetime, the court states that "the right of renunciation of a spouse's will pursuant to the statute in such case made and provided is a personal right and enures only to the benefit of a surviving spouse, and such right may not be exercised after the death of such surviving spouse by his or her personal representative, if said surviving spouse has failed to make such renunciation during his or her lifetime." The court held that the renunciation filed by the administrator of the estate of Phillip J. Arendt, deceased, "was and is of no force and effect, and is a nullity." This was in effect a declaratory judgment. Post-trial motions filed by the plaintiffs to vacate the judgment order

187

and to enter judgment for the plaintiffs, or in the alternative for a new trial, were denied.

Thereupon on August 31, 1960 the plaintiffs filed a "supplemental and amendment" to the complaint. In Count II as amended, in which they pray for a partition, they again set up the renunciation of the will of Emma R. Arendt by the administrator of the estate of Phillip J. Arendt. They also alleged that the order entered in the Probate Court in the estate of Phillip J. Arendt on January 28, 1957 adjudicated the right to renounce the will of Emma R. Arendt, that it was a final order from which no appeal had been taken, and that the order is not subject to collateral attack. The plaintiffs also set out the sale of the property and the payment of the proceeds of the sale under order of court to Chicago Title and Trust Company. They further alleged that the Circuit Court has no jurisdiction to change the final judgment order of the Probate Court.

Count III of the supplemental and amended complaint was for reformation, and Count IV was in the nature of a tort action. We are not concerned with those counts.

The defendants moved to strike Counts II, III and IV of the plaintiffs' supplemental and amended complaint. The court sustained the motion as to Counts III and IV, and thereupon the defendant John Theis filed an answer to Count II, in which answer he sets out that a judgment order had been entered in the Circuit Court on Count I of the plaintiffs' complaint asking for a declaratory judgment, which order was in favor of the defendants and against the plaintiffs, and that as a result of such judgment order the plaintiffs have no interest in the substituted funds and are not entitled to any part thereof.

Count II was set for trial before a different judge of the Circuit Court, sitting in chancery, and, after hearing, the court announced that he was ruling in favor

of the plaintiffs on Count II for partition and gave the defendants leave to file written objections to such holding. This was done, and on May 17, 1961 the court overruled the objections filed by the defendants, and directed that a decree for partition be entered on Count II of the plaintiffs' amended and supplemental complaint. The trial judge filed a memorandum in support of his decision. On May 18, 1961 the court entered what it termed a decree for partition. In its decree the court held, among other things, that the order of the judge of the Probate Court directing the renunciation was a final order and was binding on all parties, and that the order entered June 24, 1960 by another judge of the Circuit Court on Count I is void, since in declaring the renunciation filed in the Probate Court to be a nullity the order of the Circuit Court collaterally reversed the order of the judge of the Probate Court which was entered by him "within the scope of his powers." The decree complied with the provisions of section 50(2) of the Civil Practice Act making it final and appealable. From that decree this appeal is taken.

At the very threshold of the case it is necessary to determine whether or not this court has any jurisdiction to entertain this appeal.

While this suit was pending in the trial court the parties entered into an agreement for the sale of the property and the substitution of the money received for such sale as the subject matter of the suit, and the money was deposited with the Chicago Title and Trust Company subject to the further order of the court. Count II of the amended and supplemental complaint specifically sets out this proceeding and order, and prays that "a partition and division of the above described premises and substituted fund be made according to the respective rights of plaintiffs and the defendants," and that the rights and interests of the respective parties in the premises or the proceeds be ascertained and decreed by the court. The court in its

decree, among other things, found that all the parties to this cause agreed "while this suit was pending, in order to prevent waste and depreciation of the property . . . that the property be sold and the proceeds of sale partitioned, and the interests of the parties determined." The court in its decree further finds that the proceeds of the sale of the real estate "is charged as real estate." The court was asked to, and did by its decree, determine the respective shares of the parties to the suit in the funds on deposit with the Chicago Title and Trust Company, using as a yardstick the interest which those parties had in the real estate before they agreed to sell it.

 Paragraph 32 of chapter 37 of the Illinois Revised Statutes provides that the Appellate Courts shall have appellate jurisdiction on appeals from final judgments other than those involving, among other things, a freehold. Section 75 of the Practice Act (Ill Rev Stats c 110, § 75) provides that appeals shall be taken directly to the Supreme Court in all cases in which a freehold is involved. The ordinary suit for partition of real estate must necessarily involve a determination of a freehold. Under ordinary circumstances appeals from decrees in partition suits must be taken directly to the Supreme Court. In the suit before us, at the time when the court entered the decree in question the action was one not involving real estate but involving money which would be distributed to the parties as their interests might appear. No freehold was involved. In Blodgett v. Blodgett, 343 Ill 569, 175 NE 777, the court said:

> "The issues as made up by the amended and supplemental bills and answers were whether the complainant should be allowed an interest in funds derived from a prior partition sale of lands in which her husband owned an undivided one-third interest. . . .

"The decree granting the relief prayed for in this suit is for a sum of money, only, and its enforcement will not necessarily result in the loss of a freehold. . . . In order to give this court jurisdiction the freehold must be directly, and not collaterally or incidentally, involved. . . . [Citing cases.] For a freehold to be involved so as to authorize a direct appeal to this court the litigation must necessarily result in the loss of a freehold . . . ."

The Supreme Court transferred the case to the Appellate Court. See also Guttman v. Schiller, 23 Ill2d 323, 178 NE2d 387. This court has jurisdiction of the instant appeal.

██ It is immaterial to our decision of the case whether the trial court's conclusion in its decree—that something in the nature of an equitable conversion resulted and that the funds deposited should be treated and considered as real estate—was or was not correct. All the rights of the plaintiffs in the case depend upon the validity of the renunciation, and the only question before us is whether or not the Probate Court had the right to permit on behalf of Phillip J. Arendt a renunciation by the administrator of his estate after his death. The parties have argued that question at great length in their briefs. James, in 1 Illinois Probate Law and Practice, sec. 16.3, states: "The right to renounce a will is a personal right, and the death of the person having the right without exercising it, destroys the right." However, the cases cited do not clearly support the statement of the rule. This matter is put to rest once and for all time in Rock Island Bank & Trust Co. Admr. v. First National Bank of Rock Island, Exr., et al., 26 Ill2d 47, 185 NE2d 890. That case involved an incompetent, Mabel Irene Anderson, who died seventeen days after the will of her husband was admitted to probate without making any

191

attempt to renounce. A petition was brought by the administrator of the estate of Mabel Irene Anderson to determine whether the will of Edgar J. Anderson should be renounced, and the court said:

> "The sole question presented by this appeal is whether the right to renounce a will is statutory and personal and dies with the surviving spouse. This is a case of first impression . . . ."

The Probate Court had held that the right of renunciation did not survive to Mrs. Anderson's administrator. The Supreme Court said:

> "After anaylzing the decisions of the courts in other States, it appears the majority view is that the right to renounce a will is statutory and personal and dies with the *surviving incompetent spouse, in the absence of fraud, concealment or conflicting interests of the conservator.* In Sippel v. Wolff, 333 Ill 284, there is dictum indicating that renunciation of a will on behalf of an incompetent widow must be made during her lifetime." (Italics ours.)

The court quotes section 17 of the Illinois Probate Act, which provides in part: "In order to renounce a will the testator's surviving spouse shall file at the time and place provided for herein a written instrument signed by the surviving spouse and declaring the renunciation." (Ill Rev Stats 1961, c 3, § 17.) The court then states:

> "This section makes no provision for renunciation after the death of either a competent or incompetent widow and, therefore, indicates that the right of renunciation is purely personal. Had it been intended by the legislature that the right to renounce should continue after the death of the widow, it would have been easy to have said so.

In reading section 17 it indicates the intention of our law-makers to provide for the personal welfare of the widow during her lifetime. . . .

"We, therefore, adopt the majority rule that the right to renounce a will is personal and dies with the surviving spouse regardless of her incompetency, in the absence of fraud, concealment, or conflicting interest of her representative."

The case clearly holds that the question of fraud, concealment or conflicting interest can only be raised where the question of the right of renunciation is raised on behalf of an incompetent. In the case before us there is no question with reference to the mental competency of Phillip J. Arendt. Without the renunciation Helen C. Andrykowski, the administrator of the estate of Phillip J. Arendt, and his heirs would have no right whatsoever in the real estate owned by Emma R. Arendt at the time of her death. Consequently they would have no right to bring either a suit for partition or a suit seeking a share in the money received under the agreement to sell. In Peter v. Peter, 343 Ill 493, 502, 175 NE 846, 850, the court states:

"It is also argued that since the widow died before the will was actually probated it cannot be determined that she consented to take under it. While the will was probated after the commencement of this suit, it, when probated, spoke as of the death of the testator. There being, as we have seen, no act on the part of the widow evidencing a refusal on her part to take under the devise, the property, in the eyes of the law, vested in her at the time of the testator's death. Crooker v. McArdle, 332 Ill 27; Rebhan v. Mueller, supra; Hicks v. Deemer, 187 Ill 164."

■■■■ The plaintiffs argue at length that the trial judge in the Circuit Court had no right to enter an or-

der setting aside the order of the Probate Court allowing the renunciation. Their argument is based on the theory that it is a collateral attack upon an order of a court which had the necessary jurisdiction to enter such an order. The Probate Court has only such power as is specifically given it by statute under constitutional limitation. In Armstrong v. Obucino, 300 Ill 140, 133 NE 58, it is held that where a court has jurisdiction of the parties and subject matter and enters judgment, the judgment may be void if the court exceeds its general jurisdiction, and it further holds that if a court of general jurisdiction goes further than a statute permits, such judgment is void. The court said:

> "The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds according to the established modes governing the class to which the case belongs and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it."

In Barnard v. Michael, 392 Ill 130, 63 NE2d 858, the court said:

> "A judgment, order or decree entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, is void, and may be attacked at any time or in any court, either directly or collaterally."

In the instant case the Probate Court had no power to enter the order permitting the renunciation, and the order is void. The Circuit Court in its judgment order entered on Count I in the declaratory judgment proceedings held that the order of the Probate

194

Court was of no force and effect. This holding of the Circuit Court was a proper and valid exercise of its powers in recognizing a collateral attack on a void order and setting it aside. Accordingly the judgment order entered in the declaratory judgment proceedings is affirmed.

The decree entered in the Circuit Court on Count II of the supplemental and amended complaint is reversed, and the cause is remanded to the Circuit Court with directions to enter such orders as may be necessary, so that the money on deposit with Chicago Title and Trust Company pursuant to its prior order will be paid over to the persons entitled to the same in accordance with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded with directions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.